UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENISE OVERTON, Individually and as Personal Representative for the Estate of Bertha L. Minor, and LARUE MINOR, )<br><br>Plaintiff, )<br><br>v. )<br><br>FOUTTY & FOUTTY, LLP, ANTHONY L. MANNA, and DON SISLER, )<br><br>Defendants. ) | CASE NO. 1:07-cv-0274-DFH-TAB |

ENTRY ON DEFENDANTS' MOTION TO DISMISS

Plaintiffs Denise Overton and Larue Minor have brought suit on behalf of themselves and the estate of their deceased mother, Bertha Minor. Defendants are the law firm of Foutty & Foutty, LLP, attorney Anthony Manna with the law firm, and Don Sisler, a paralegal with the firm who met with plaintiffs. Plaintiffs assert three theories of liability, including negligence, negligent supervision and several violations of the Fair Debt Collection Practices Act ("FDCPA"), the latter of which provided the basis for defendants' removal of this action from state court. The defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[1]

---

[1]Plaintiffs only recently learned the identity of defendant Sisler. Plaintiff's motion to amend the complaint is hereby granted, and the court has modified the
(continued...)

*Standard for Dismissal*

In deciding a motion under Rule 12(b)(6), the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in favor of the plaintiffs. *E.g.*, *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005). While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it is not enough merely that there might be some conceivable set of facts that would entitle the plaintiffs to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. —, —, 127 S. Ct. 1955, 1968-69 (2007), abrogating in part *Conley v. Gibson*, 355 U.S. 41 (1957). A plaintiff has an obligation under Rule 8(a)(2) to provide the grounds of his or her entitlement to relief. This obligation requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. 550 U.S. at —, 127 S. Ct. at 1965. Factual allegations must be enough to raise a right to relief above the speculative level, treating the factual allegations as true. *Id.*

Plaintiffs still need not plead a trail of specific facts to support each burden assumed by the assertion of a particular theory of liability. See *Erickson v. Pardus*, 551 U.S. —, —, 127 S. Ct. 2197, 2200 (2007). And, as pointed out by the first reported Court of Appeals opinion to take a close look at *Twombly*, the Court's explicit approval of Form 9 of the Federal Civil Rules, Complaint for

---

[1](...continued)
caption accordingly. As defendants have requested, and to avoid unnecessary repetition of motions practice, the court has applied the pending motion to dismiss to the tendered second amended complaint.

Negligence, shows that it expects no heightened fact pleading requirement with regard to a bare allegation of negligence.  *Iqbal v. Hasty*, 490 F.3d 143, 156 (2d Cir. 2007).  While Form 9 provides some detail with regard to where, when and how a plaintiff was injured in an automobile accident, the allegation upon which liability is premised is simply that the "defendant negligently drove a motor vehicle against plaintiff."  The Supreme Court was not suggesting in *Twombly* that the plaintiff must allege more specifically that the negligent driver was speeding, ran a stop sign, or failed to yield.  *Id.*

*Plaintiffs' Allegations*

In light of the applicable standard, the court assumes the following factual allegations from the second amended complaint are true, without vouching for their accuracy.  Plaintiffs' mother passed away on January 24, 2005, owing approximately $9,000 on her home mortgage.  She did not leave a will.  A few months later, plaintiff Overton contacted the company servicing the loan on her mother's home and offered to take over the loan payments, but she was denied that opportunity.  The holder of the note and mortgage later initiated foreclosure proceedings through Anthony Manna at Foutty & Foutty, LLP.  No estate had been opened on behalf of Bertha Minor.  Attempts were made to serve her by mail and by leaving a copy of the summons at the mortgaged property where she and Overton had lived.  Another attempt at service by mail on Bertha Minor in Milledgeville, Georgia resulted in the return of the certified mailing receipt with the signature of Patricia Minor dated October 5, 2005.

-3-

On January 24, 2006, attorney Manna filed an application for default judgment in the foreclosure action.  He averred that service had been made and that Bertha Minor had failed to appear.  The application included Manna's Affidavit as to Attorney Fees, which listed various tasks that had been or would be performed to perfect the foreclosure.  The court granted the application for default and entered default judgment against the deceased Ms. Minor on January 25, 2006.  Plaintiffs claim to have learned of the foreclosure proceedings and the default only after they opened a letter addressed to their mother setting forth the details of the Sheriff's Sale to be held on April 19, 2006.

After they received notice of the Sheriff's Sale, plaintiffs allege, they went to the law offices of defendant Foutty & Foutty and asked to speak with defendant Manna.  They were denied access to Manna but spoke with paralegal Don Sisler. Plaintiffs told Sisler that their mother, the named defendant in the foreclosure action, had died long before the foreclosure action was filed and that they had just learned of the lawsuit.  They asked why this was happening without anyone informing them.  Sisler told them that once the certified mail receipt was signed by the person in Georgia, the firm had enough to proceed with the foreclosure. Plaintiffs told him that the heirs of Bertha Minor wished to stop the Sheriff's Sale and wished to purchase the property.  Sisler told the plaintiffs, they allege, that they needed to file a quitclaim deed in each heir's name in order to stop the sale of the home.

Armed with this spurious advice, the plaintiffs prepared quitclaim deeds for each heir and took them to an "Ask a Lawyer" event sponsored by the local bar association.  When the volunteer attorney learned of the circumstances for which the deeds had been prepared, he told plaintiffs that the foreclosure action should have been brought against the estate of Bertha Minor.  He questioned whether the plaintiffs or the heirs had any authority at this point to offer or file quitclaim deeds.  Plaintiffs then began searching for an attorney to take up their cause.

According to plaintiffs, even though the Foutty & Foutty law firm then knew (through paralegal Sisler) that Bertha Minor had died before suit was filed, the firm made no effort to stop the Sheriff's Sale.  The home, which still housed the personal property of Minor and Overton, was sold for $11,500.  On May 23, 3006, Overton received a telephone call while she was out of town reporting that someone had thrown all of the personal property into a trash container in the driveway of the home.  Overton returned to Indianapolis to find that the personal property, including furniture, clothing, household items, financial documents, photographs, and keepsakes, had been ruined by the elements after having been tossed in the trash container by the buyer.

After obtaining counsel, plaintiffs were able to have the default judgment in the foreclosure action set aside and the Sheriff's Sale vacated.  They went to court and opened an estate for Bertha Minor on August 25, 2006.  Plaintiffs filed this

action for damages in state court on January 24, 2007, and defendants removed to this court effective February 28, 2007.

*Discussion*

I.    *The FDCPA Claims*

Plaintiffs allege that defendants violated several provisions of the FDCPA. They allege that defendants failed to provide the plaintiff estate the validation rights notice required by 15 U.S.C. § 1692g(a), used unfair and unconscionable means to collect a debt in violation of § 1692f(1), misrepresented the character, amount, and legal status of the estate's debt in violation of § 1692e(2), and threatened to foreclose and foreclosed on the estate's property without having properly served process and without a legal right to foreclose, in violation of § 1692e(5).

Defendants argue that the second amended complaint shows that there is no valid FDCPA claim because their alleged activities were only "security enforcement activities," not "debt collection practices."  Recent decisions of other federal circuit and district courts are split on this question, and the Seventh Circuit has not yet squarely addressed the question.  The Seventh Circuit has noted the distinction, however, in *Nadalin v. Automobile Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (FDCPA defines "debt collectors" as excluding repossessors and other enforcers of security interests, except that a repossessor

may not take or threaten to take non-judicial action to dispossess debtor of property if there is no present right to possess the property claimed as collateral through an enforceable security interest).

Given the split in the case law, let's start with the statutory language. The FDCPA has a detailed definition of "debt collector." To begin with, the term means

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. * * * For the purpose of section 808(6) [15 U.S.C. § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C.A. § 1692a(6). (The statutory definition then lists several exceptions not relevant to this case.) The referenced section 1692f(6) makes it unlawful for a debt collector to take or threaten to take any non-judicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest, if there is no present intention to take possession of the property, or if the property is exempt by law from such dispossession or disablement.

The FDCPA provisions that plaintiffs say were violated here require proof that the defendant is a "debt collector" who was acting "in connection with the collection of any debt." 15 U.S.C. §§ 1692e & 1692g. At the risk of slicing this topic too thinly, the statutory language distinguishes between the *identity* of the

-7-

defendant, who must be a "debt collector" within the meaning of the FDCPA, and the *actions* of the defendant toward the plaintiff, which must be taken "in connection with the collection of any debt." When the issue is viewed this way, it is at least theoretically possible for a defendant to be a debt collector based on its regular or principal activities, yet to act in a particular case for the sole purpose of enforcing a security interest (such as by repossessing an automobile or foreclosing on a home), without also attempting to collect a debt.

Focusing first on identity, the general definition under the FDCPA requires the defendant to be a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The focus here is not on the events of the particular transaction but on the principal purpose of the defendant's business and/or the defendant's regular activities. See *Kaltenbach v. Richards*, 464 F.3d 524, 527-29 & n.5 (5th Cir. 2006) (holding that entire FDCPA can apply to defendant whose principal business is enforcing security interests but who also fits the general definition of a "debt collector"; court did not reach question of whether defendant's communication to the specific plaintiff was "in connection with the collection of any debt"); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006) (definition of "debt collector" does not exclude those who enforce security interests but who also fall under general definition of "debt collector").

-8-

Here, the plaintiffs allege that defendants are "debt collectors" under the FDCPA.  Second Am. Compl. ¶ 5.  The accuracy of that allegation requires a look at the general nature of the defendants' law practice, and the second amended complaint does not plead facts that would undermine that allegation.  The court concludes that it cannot dismiss the FDCPA claims under Rule 12(b)(6) on the ground that defendants are not debt collectors within the meaning of § 1692a(6).

Defendants' primary argument is that they were not acting "in connection with the collection of any debt" when they were foreclosing the mortgage on Bertha Minor's home.  The argument is based on the definition of "debt collector" quoted above and its special treatment of businesses whose principal purpose is the enforcement of security interests, as distinct from the collection of debts.  A number of courts have inferred from this provision and related evidence that the FDCPA does not apply to activity that is limited to enforcement of security interests, apart from the provision in § 1692f(6).

Chief Judge Miller of the Northern District of Indiana laid out the principal arguments for defendants' position in *Rosado v. Taylor*, 324 F. Supp. 2d 917 (N.D. Ind. 2004).  In *Rosado*, the plaintiff alleged that the defendant attorney had violated the FDCPA in his handling of a lawsuit to foreclose a residential mortgage.  Judge Miller held that the FDCPA did not apply to the foreclosure lawsuit because it was only an effort to enforce a security interest, not to collect a debt.  Judge Miller based his holding on the statutory definitions discussed above.  One may

infer from the specific provision applying § 1692f(6) to enforcers of security interests that the remaining sections of the FDCPA do not apply if the defendant's principal or regular business is the enforcement of security interests, and not the distinct activity of collecting consumer debts.  See *Rosado*, 324 F. Supp. 2d at 924; see generally *Russello v. United States*, 464 U.S. 16, 23 (1983) (when Congress includes language in one section of a statute but omits it from other sections of the same Act, it should be presumed that the disparate inclusion or exclusion was intentional).

*Rosado* also emphasized the lack of the same characteristic wrong that Congress sought to minimize when comparing enforcement of security interests to the collection of debts.  324 F. Supp. 2d at 924-25.  This point was first raised in *Jordan v. Kent Recovery Services, Inc.*, 731 F. Supp. 652 (D. Del. 1990), a case often cited on this issue.  The court in *Jordan* granted summary judgment to a defendant after reviewing the legislative history of the FDCPA, noting that the Act had responded in part to a report that the vast majority of consumers who default after obtaining consumer credit are not "deadbeats" but default as a result of unforeseen circumstances.  *Id.* at 657-58.  The *Jordan* court concluded that the FDCPA "was enacted in order to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have."  *Id.*   In contrast, a party with a security interest may have a "present right" in a particular secured property that another possesses.

*Id.* at 658.  The debtor should be in a position to return the property.  *Rosado,* 324 F. Supp. 2d at 924-26.

Judge Miller took pains to point out in *Rosado* that there was no evidence that the foreclosure suit against Rosado sought a deficiency judgment personally against the debtor.  324 F. Supp. 2d at 925-26.  That circumstance might have been rare, but the inference to be drawn from that point in the reasoning is that the result should have been different if the defendant had also been seeking a deficiency judgment personally against the debtor.

The analysis in *Rosado* and *Jordan* is consistent with decisions by the Sixth Circuit, *Montgomery v. Huntington Bank*, 346 F.3d 693, 700 (6th Cir. 2003) (affirming Rule 12(b)(6) dismissal; agency that repossessed auto without seeking additional money from debtor was not "debt collector" under the FDCPA), and a number of other district courts.  *E.g.*, *Gonzalez v. Northwest Trustee Services, Inc.*, 2005 WL 2297097, *2 (D. Ore. Sept. 20, 2005) (granting summary judgment for defendant where mortgagee did not attempt to collect a debt personally from plaintiff); *Miller v. Northwest Trustee Services, Inc.*, 2005 WL 1711131, *3 (D. Ore. July 20, 2005) (granting motion to dismiss); *Beadle v. Haughey*, 2005 WL 300060, *3 (D.N.H. Feb. 9, 2005) (granting summary judgment for defendant); *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1203-04 (D. Ore. 2002) (granting summary judgment for defendant); *Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716, 722 (N.D. W. Va. 1998) (granting summary judgment for

defendant), *aff'd mem.*, 173 F.3d 850 (4th Cir. 1999); *Bergs v. Hoover, Bax & Slovacek, L.L.P.*, 2003 WL 22255679, *4-5 (N.D. Tex. Sept. 24, 2003) (granting summary judgment for defendant).

On the other side of the issue, *McDaniel v. South & Associates, P.C.*, 325 F. Supp. 2d 1210, 1216-18, 1220 (D. Kan. 2004), granted summary judgment in part for the plaintiff debtors who had been the target of judicial foreclosure proceedings.   In both foreclosure actions at issue, the creditor's attorney had sought deficiency judgments personally against the debtors, in addition to enforcement of the security interest.  Accord, *Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227, 236 (3d Cir. 2005) (affirming summary judgment for debtor where private attorney for city demanded payment of municipal water bills; municipal lien on real estate did not remove activity from scope of FDCPA).

The Fourth Circuit appears to have disagreed with the Sixth Circuit and district court decisions that allow for the possibility that a person can enforce a security interest in a foreclosure proceeding without acting "in connection with the collection of any debt."  In *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006), the district court had granted summary judgment because the defendant attorneys had initiated the foreclosure proceedings as substitute trustees seeking to foreclose on a deed of trust, rather than as "debt collectors" as defined under the FDCPA.  *Id.* at 374.  The Fourth Circuit reversed, holding that: (1) the defendants were acting in connection with a debt; (2) which remained a

debt even after foreclosure proceedings were started; and (3) the FDCPA's definition of a debt collector does not exclude those who enforce security interests, but who also fall under the general definition of "debt collector." *Id.* at 378-79. The Fourth Circuit rejected the conclusions of *Hulse* and *Heinemann* that it would be possible to enforce a security interest in a foreclosure action without also collecting the debt:

> Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.

443 F.3d at 376.

This court believes that *Rosado*, *McDaniel*, and *Beadle* draw the right line here, one that is consistent with the statutory language and with most of the decisions in this field. If a person invokes judicial remedies *only* to enforce the security interest in property, then the effort is not subject to the FDCPA (other than §1692f(6) and § 1692i(a)). But if the person is also seeking additional relief, such as a personal judgment against the borrower, then the FDCPA applies. That line takes into account the statutory language indicating that § 1692f(6) applies to persons seeking to enforce security interests and the venue provision for mortgage foreclosures in § 1692i(a). That line appears to be consistent with at least *Jordan*, *Rosado*, *Beadle*, *Heinemann*, *Hulse*, *Bergs*, *Gonzalez*, *Miller*, and *McDaniel*. It is not inconsistent with the Sixth Circuit's decision in *Montgomery*

or the Fifth Circuit's decision in *Kaltenbach*, see 464 F.3d at 529 n.5 (declining to decide whether efforts to enforce security interest were also "in connection with the collection of any debt").  That line appears not to be consistent with the reasoning of the Fourth Circuit in *Wilson*.  To the extent there is inconsistency, this court respectfully believes that *Wilson* does not address sufficiently the specific treatment given in the statute to limit its application in cases seeking to enforce *only* security interests.  The line this court draws also avoids creating "an enormous loophole" in mortgage foreclosure cases, for example, because efforts to enforce only the security interest, without also seeking a deficiency judgment or other relief, appear likely to be unusual.

In this case, the line the court draws leads the court to deny defendants' motion to dismiss the FDCPA claim.  Plaintiffs have alleged that the foreclosure suit against their mother not only sought to foreclose the mortgage but also sought a personal judgment against her, as in *McDaniel*.  See Compl. Ex. E (state court decree of foreclosure, which included personal judgment).  The FDCPA claims therefore stay in the case, at least for now, and the case stays here in federal court.

II.     *State Law Claims*

Plaintiffs also assert two negligence claims, a straight-forward charge of negligence against all the defendants and a negligent supervision and training claim against the law firm defendant.  Under Indiana law, a prima facie case of

negligence requires (1) the existence of a duty owed by the defendant to the plaintiff, (2) the breach of that duty by the defendant, and (3) injury to the plaintiff proximately caused by the breach.  *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004); *Cincinnati Ins. Co. v. Davis*, 860 N.E.2d 915, 923 (Ind. App. 2007).  Indiana recognizes claims such as negligent supervision, training, hiring or retention.  See *Tindall v. Enderle*, 320 N.E.2d 764, 766 (Ind. App. 1974).  All such claims require that the elements of a negligence claim be present, including a duty to anticipate and guard against the conduct of others.  *Id.*  That duty generally exists with respect to anyone who opens his business to the public and employs persons who interact with the public.  *Id.*  However, because Indiana recognizes the doctrine of respondeat superior, the same are duplicative and of no value where an employer has admitted that its employee was acting within the scope of his employment.  *Board of School Com'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326, 333-34 (Ind. App. 2006).  In this case, there has been no answer filed by defendants that would clarify whether there is an admission that the defendant attorney and paralegal Sisler acted within the scope of their employment, though that seems likely, taking plaintiffs' allegations at face value.

Defendants argue that, as a matter of law, there was no relationship between them and the plaintiffs that would result in the defendants owing any duty to plaintiffs.  In tort law, duty is rooted in the relationship between the parties, and the existence of a duty is often said to be a question of law for the court.  *E.g.*, *Cox v. Paul*, 828 N.E.2d 907, 911 (Ind. 2005).  However, a

determination that a duty exists is not always a pure legal question, as Indiana courts have pointed out on many occasions:

> Generally, whether a duty exists is a question of law for the court to decide. *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994). Sometimes, however, the existence of a duty depends upon underlying facts that require resolution by the trier of fact. *Douglass,* 549 N.E.2d at 369 n.1 ("'While it is clear that the trial court must determine if an existing relationship gives rise to a duty, it must also be noted that a factual question may be interwoven with the determination of the existence of a relationship, thus making the ultimate existence of a duty a mixed question of law and fact.'" (quoting *Clyde E. Williams & Assocs. v. Boatman*, 176 Ind. App. 430, 435, 375 N.E.2d 1138, 1141 (1978))).

*Rhodes*, 805 N.E.2d at 386; accord, *Douglass v. Irvin*, 549 N.E.2d 368, 369-70 (Ind. 1990); *Bowman ex rel. Bowman v. McNary*, 853 N.E.2d 984, 990 (Ind. App. 2006); *Horine v. Homes by Dave Thompson, LLC*, 834 N.E.2d 680, 683 (Ind. App. 2005).

Defendants emphasize that they represent the creditor in the underlying foreclosure. They contend therefore that no duty could possibly arise from an adversarial relationship with plaintiffs. The court reads the allegations a little differently. First, the individual plaintiffs (as opposed to the estate) were not the debtors. Their interests may have been similar when they walked into the law firm's offices, but strictly speaking, they were not on the other side of the foreclosure lawsuit. As this court sees the question, what was represented to plaintiffs during the course of their visit is of paramount importance in determining the nature of the relationship that developed between plaintiffs and the defendants.

-16-

Even if no duty was owed to plaintiffs by the defendants prior to that visit, in Indiana a duty can be assumed by conduct. *Vandenbosch v. Daily*, 785 N.E.2d 666, 668-69 (Ind. App. 2003). "Whether a party has assumed a duty and the extent of that duty, if any, are questions for the trier of fact." *Vaughn v. Daniels Co. (West Virginia), Inc.*, 841 N.E.2d 1133, 1144 (Ind. 2006). The facts alleged in the second amended complaint in this lawsuit leave an impression that the plaintiffs, rightly or not, believed that paralegal Sisler, if not the law firm, wanted to help them solve their problem. Perhaps such a belief was a reasonable response to the information provided to them, and in following the suggestions they Sisler allegedly made, they took a path that led to their damages. Accordingly, the negligence claims remain a part of the lawsuit at this point.[2]

Defendants are entitled to prevail on one issue. They argue that plaintiffs cannot be entitled to compensation for emotional distress under any of their theories of recovery. This contention has merit because Indiana law requires some physical impact to recover for emotional distress in a negligence case. *Atlantic Coast Airlines v. Cook,* 857 N.E.2d 989, 996-97 (Ind. 2006). There is no physical impact alleged in this matter, and it is clearly a case about professional conduct, not physical injury.

---

[2]Both sides dedicated portions of their briefs to a discussion of whether a duty existed as a result of the terms of the Indiana Probate Code. The court need not reach that issue to decide the pending motion. The question is reserved for later consideration, if necessary.

*Conclusion*

For the foregoing reasons, defendants' Motion to Dismiss (Docket No. 11) as applied to the Second Amended Complaint is GRANTED IN PART as applied to the claim for emotional distress and DENIED in all other respects.

So ordered.

Date: August 21, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jason L. Fulk
HOOVER HULL LLP
jfulk@hooverhull.com

G. Ronald Heath
HOOVER HULL LLP
grheath@hooverhull.com

Christine M. Jackson
cmj@chrisjacksonlaw.com

Alice McKenzie Morical
HOOVER HULL LLP
amorical@hooverhull.com